**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 16-cv-02907- STV

YVONNE MARIE TERRELL,

      Plaintiff,

v.

NANCY A. BERRYHILL,[1] Acting Commissioner of Social Security,

      Defendant.

_____

**ORDER**
_____

Magistrate Judge Scott T. Varholak

      This matter is before the Court on Plaintiff Yvonne Marie Terrell's Complaint seeking review of the Commissioner of Social Security's decision denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"), 42 U.S.C. § 401 *et seq.*, and supplemental security income benefits ("SSI") under Title XVI of the SSA, 42 U.S.C. § 1381 *et seq.* [#1] The parties have both consented to proceed before this Court for all proceedings, including the entry of final judgment, pursuant to 28 U.S.C. 636(c) and D.C.COLO.LCivR 72.2. [#13] The Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. §§

_____

[1] Carolyn W. Colvin is the named Defendant in the Complaint as she was the Commissioner of Social Security at the time the Complaint was filed. [#1] Nancy A. Berryhill currently serves as the Acting Commissioner of Social Security. [#16 at 1 n.1] Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill, as Commissioner Colvin's successor, "is automatically substituted as a party." *See also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.")

405(g) and 1383(c)(3). This Court has carefully considered the Complaint [#1], the Social Security Administrative Record [#11], the parties' briefing [#15, 16], and the applicable case law, and has determined that oral argument would not materially assist in the disposition of this appeal. For the following reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** this matter for further proceedings.

## I. LEGAL STANDARD

### A. Five-Step Process for Determining Disability

The Social Security Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[2] 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just his underlying impairment." *Lax*, 489 F.3d at 1084. "In determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility . . ., the Commissioner [ ] shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

---

[2] "Substantial gainful activity" is defined in the regulations as "work that (a) [i]nvolves doing significant and productive physical or mental duties; and (b) [i]s done (or intended) for pay or profit." 20 C.F.R. §§ 404.1510, 416.910; *see also* 20 C.F.R. §§ 404.1572, 416.972.

"The Commissioner is required to follow a five-step sequential evaluation process to determine whether a claimant is disabled." *Hackett v. Barnhart*, 395 F.3d 1168, 1171 (10th Cir. 2005). The five-step inquiry is as follows:

1. The Commissioner first determines whether the claimant's work activity, if any, constitutes substantial gainful activity;

2. If not, the Commissioner then considers the medical severity of the claimant's mental and physical impairments to determine whether any impairment or combination of impairments is "severe;"[3]

3. If so, the Commissioner then must consider whether any of the severe impairment(s) meet or exceed a listed impairment in the appendix of the regulations;

4. If not, the Commissioner next must determine whether the claimant's residual functional capacity ("RFC")—*i.e.*, the functional capacity the claimant retains despite her impairments—is sufficient to allow the claimant to perform her past relevant work, if any;[4]

5. If not, the Commissioner finally must determine whether the claimant's RFC, age, education and work experience are sufficient to permit the claimant to perform other work in the national economy.

*See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005); *Bailey v. Berryhill*, 250 F. Supp. 3d 782, 784 (D. Colo. 2017). The claimant bears the burden of establishing a *prima facie* case of disability at steps one through four, after which the burden shifts to the Commissioner at step five to show that claimant retains the ability to perform work in the national economy. *Wells v. Colvin*, 727 F.3d 1061, 1064 n.1 (10th Cir. 2013); *Lax*, 489 F.3d at 1084. "A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive

---

[3] The regulations define severe impairment as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c).

[4] Past relevant work is defined as "work that [the claimant] ha[s] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. §§ 404.1560(b)(1); 416.960(b)(1); *see also* 20 C.F.R. §§ 404.1565(a); 416.965(a).

and terminates the analysis." *Ryan v. Colvin*, 214 F. Supp. 3d 1015, 1018 (D. Colo. 2016) (citing *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991)).

### B.     Standard of Review

In reviewing the Commissioner's decision, the Court's review is limited to a determination of "whether the Commissioner applied the correct legal standards and whether her factual findings are supported by substantial evidence." *Vallejo v. Berryhill*, 849 F.3d 951, 954 (10th Cir. 2017) (citing *Nguyen v. Shalala*, 43 F.3d 1400, 1402 (10th Cir. 1994)).  "With regard to the law, reversal may be appropriate when [the Commissioner] either applies an incorrect legal standard or fails to demonstrate reliance on the correct legal standards." *Bailey*, 250 F. Supp. 3d at 784 (citing *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir.1996)).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (quoting *Lax*, 489 F.3d at 1084).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Grogan*, 399 F.3d at 1261-62 (quoting *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992)).  The Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the [Commissioner's] findings in order to determine if the substantiality test has been met.'" *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (quotation omitted).  The Court, however, "will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Hackett*, 395 F.3d at 1172.

## II.    BACKGROUND

Plaintiff was born in February 1963.    [AR 142, 145][5]    Plaintiff speaks and understands English and received her General Equivalency Degree ("GED").    [AR 31, 168; *see generally* AR 30-48]    On October 28, 2013, Plaintiff protectively filed an application for DIB and, on December 24, 2013, Plaintiff protectively filed an application for SSI.    [AR 142-50]    In both applications, Plaintiff claimed a disability onset date of September 14, 2013, and thus Plaintiff was 50 years old at the time of the alleged onset.    [AR 142, 145]    Plaintiff claims disability based upon physical and mental impairments resulting from strokes Plaintiff suffered in September 2013.    [AR 19, 29-30; #15 at 4-7]    Plaintiff had previously worked as a medical clerk, but has not performed that or any other work since September 2013.    [AR 31-35, 175]

### A.    Medical Background

In 2009, Plaintiff was hospitalized for hemorrhagic stroke.    [AR 391]    A conventional catheter arteriography on September 18, 2009 revealed a saccular aneurysm of the right internal carotid artery.    [*Id.*]    Plaintiff elected to have endovascular treatment—*i.e.*, coiling.    [*Id.*]

In February 2013, Plaintiff was taken to the hospital by ambulance with a severe headache and was diagnosed with a subarachnoid hemorrhage due to a ruptured aneurism.    [AR 217-18, 224]    Plaintiff underwent interventional radiology and had cerebral angiogram with coiling of an ACOM aneurysm as well as a right ICA/superior hypophyseal aneurysm.    [AR 222]    Plaintiff spent two weeks in intensive care.    [*Id.*]    Plaintiff was then transferred to the neuro medical floor, which noted that Plaintiff has "a

---

[5]    All references to "AR" refer to the sequentially numbered Social Security Administrative Record filed in this case.    [#11]

longstanding history of poorly controlled hypertension." [*Id.*] Plaintiff was discharged and was able to return to work. [AR 459]

On or about September 19, 2013, Plaintiff was readmitted to the hospital for placement of a flow-diverting stent into the right ICA aneurysm; there were several unsuccessful attempts to place the stent. [AR 273] On September 20, 2013, Plaintiff was noted to have unexpected left hemiparesis. [*Id.*] An MRI of her brain showed multiple right middle cerebral artery borderzone strokes involving the basal ganglia, right occipital, right cerebellar, and right pons. [AR 272-73] Plaintiff also was noted to have malignant hypertension that was difficult to control. [AR 273] Plaintiff was admitted to the ICU for observation and was determined to have left hemiparesis, dysphagia, cognitive deficit, and abulia. [*Id.*] Medical personnel determined that Plaintiff "would require [an] interdisciplinary rehabilitation program prior to her being able to return home" and she was admitted for rehabilitation. [*Id.*]

Plaintiff remained in the in-patient rehabilitation program for over a month—until approximately November 8, 2013. [AR 272-75] At the time of admission to the rehabilitation program, Plaintiff required moderate assistance for transfers from sitting to standing, maximum assistance for eating and grooming and for upper and lower extremity dressings, and was dependent on assistance for bathing and toileting. [AR 275] Plaintiff also had significant neurocognitive deficits, requiring moderate to maximum cues to correctly answer questions and verbal cues to initiate responses. [AR 458, 460] Plaintiff required a longer processing time and had 57% accuracy in her answers to problem-solving tasks. [AR 460] At admission, Plaintiff had mild-to-moderate deficits in auditory comprehension, moderate written language and memory

deficits, moderate-to-severe pragmatic deficits, and severe reading comprehension, organization, problem-solving, reasoning and attentional deficits.  [AR 274]

At the time of discharge from rehabilitation, Plaintiff was independent in eating, grooming, upper and lower extremity dressings and had modified independence in bathing and toileting.  [AR 275]  Plaintiff's motor speech was normal, but she continued to have mild pragmatic, written language, auditory and reading comprehension deficits, mild-to-moderate memory and attentional deficits, and moderate organizational, problem-solving, and reasoning deficits.  [AR 274]  Plaintiff required 24-hour supervision at home, including supervision for medications, and was not permitted to return to driving.  [AR 275]   Plaintiff was instructed to continue physical therapy, occupational therapy, and speech therapy.  [*Id.*]

On October 18, 2013, Plaintiff had a follow-up appointment to address recurrent nausea, anorexia, and weight loss.  [AR 469]  Plaintiff reported that she was not eating simply because she was not hungry.   [*Id.*]   The doctor noted that Plaintiff was "[d]epressed-appearing."  [*Id.* at 470]

On December 9, 2013, Plaintiff had an initial evaluation following her release from rehabilitation.  [AR 404-05]  Plaintiff reported an aggressive rehabilitation regimen, including physical therapy several times a week at her home.  [AR 404]  Plaintiff noted significant improvement in her strength though she was not yet back to her baseline. [*Id.*]  Plaintiff's hypertension was identified, but the report notes that Plaintiff was not currently experiencing any symptoms.  [*Id.*]  The report further notes that Plaintiff had become significantly depressed during her hospital stay and was started on Celexa. [*Id.*]  Plaintiff reported that her mood had improved from where it was several months

ago and the doctor described her depression as "well controlled" on the medication. [AR 404-05] The doctor noted that it remained to be seen what Plaintiff's full recovery would be but that he suspected it would be "quite a bit less than her baseline." [AR 405]

On January 6, 2014, Plaintiff saw a doctor and reported persistent weakness on her left side with instances of falling over the course of the prior two weeks. [AR 402] Plaintiff noted that her physical therapy had ended several weeks ago and that she felt like she had actually been doing worse. [*Id.*] Plaintiff also reported that she had fallen in the bathtub recently, though the report notes that she did not have adaptive devises in her bathtub. [*Id.*] The doctor concluded that the falling likely was a consequence of Plaintiff's left-sided weakness; though her strength was normal, the doctor suspected it related more to coordination issues. [*Id.*] Plaintiff's sister told the doctor that she was concerned that Plaintiff was not continuing to improve, but Plaintiff stated that she did not feel like she was doing that bad and did not believe she needed further therapy. [*Id.*] Plaintiff also reported a poor appetite and the report references continued hypertension. [*Id.*] The report from a February 6, 2014 follow-up visit indicates that Plaintiff had normal strength but that she continued to experience fatigue and a loss of appetite. [AR 401]

On or about July 16, 2014, Plaintiff was readmitted for a cerebral angiogram and stent/coil retreatment of her anterior communicating artery aneurysm. [AR 437, 439, 446, 449] It was noted that Plaintiff had a history of neurocognitive deficits as a result of her condition and, upon examination, Plaintiff was found to have left upper and lower extremity weakness from the prior MCA stroke and a medially deviated left eye. [AR 439-40, 444] Plaintiff reported that she had started to ambulate with a walker, but she

still was unable to walk with a cane. [AR 442] On or about January 15, 2015, a follow-up diagnostic cerebral angiogram was administered. [AR 430, 433-34] The doctor's notes from her visit indicated that Plaintiff continued to experience minimal left-sided weakness.[6] [AR 429]

On the Function Report form, which Plaintiff completed on December 17, 2013, Plaintiff reported that her condition limited her ability to work because her balance was off, she was very tired and weak all the time, and she needed to use a walker to walk. [AR 183, 190] Plaintiff stated that she was able to address her personal hygiene needs, but that it took her longer to do because of fatigue. [AR 184] Plaintiff stated that she is unable to use the stove to prepare meals, because she would forget to turn it off. [AR 185] Plaintiff stated that her sister and niece do all the chores around the house due to Plaintiff's balance issues and weakness. [*Id.*] Plaintiff reported that her ability to handle money was not as good as it used to be and that she has to do it slowly because of her memory deficits. [AR 186-87] Plaintiff stated that she was only able to pay attention for 30-minute intervals of time. [AR 188] She reported that she was "ok" with written instructions but could only follow short spoken instructions. [*Id.*]

At the July 20, 2015 hearing, Plaintiff testified that she continues to use a walker whenever she leaves her house, that she is unable to cook meals other than warming things up in the microwave, and that she is unable to do her own laundry. [AR 36-37] Plaintiff stated that she has deficiency with her concentration and memory and provided a recent example of forgetting that she had filled out a form requested by her attorney.

---

[6] At the July 20, 2015 hearing, Plaintiff testified that she had an additional coiling procedure in April 2015. [AR 30, 38-39] The last appointment reflected in the medical records submitted by Plaintiff's counsel following the hearing, however, was on January 15, 2015. [AR 423]

[AR 37]  Plaintiff testified that she was able to do some reading and to pay attention and focus on the television shows she watched and remember them the following day.  [AR 37-38]  Although Plaintiff has not gone to the movies since her strokes, she testified that she did not think she would have a difficult time sitting through a two-hour movie because she watches television at home.  [AR 44]  Plaintiff testified that she has not had cognitive therapy to help with her memory loss, but that she has tried memory games recommended by her doctor, which she finds difficult.  [AR 38]  Plaintiff testified that she has not driven since her strokes, because she does not feel safe to drive because she doesn't "see much on the left" side.  [AR 42-43]  Plaintiff testified that she had walked about ten minutes that morning to get to the hearing and felt that was about her maximum limit.  [AR 44]  Plaintiff stated that she had no difficulty with sitting, but that she could probably only stand for approximately ten minutes before she would need to sit and that she cannot lift things due to her balance issues.  [AR 44-45]  Plaintiff testified that she does not have any trouble with hand functioning and has gotten better at filling her pill box without assistance.  [AR 46]  Plaintiff testified that she had good days and bad days, with about six bad days per month where she is extra tired and experiences nausea.  [AR 46-48]  Plaintiff stated that she still has left-side weakness but that she is no longer falling.  [AR 47-48]

### B.    Procedural History

Plaintiff's applications for DIB and SSI were initially denied on April 23, 2014.  [AR 64, 74]  On June 5, 2014, Plaintiff completed a request for a hearing before an ALJ.  [AR 91-92]  A hearing was conducted before ALJ Rebecca LaRiccia on July 20, 2015, at which Plaintiff and vocational expert Alissa Smith both testified.  [AR 15, 28]  Plaintiff

was represented at the hearing by an attorney, Andrea Corvin-Wien.  [*Id.*]  On August

20, 2015, the ALJ issued a decision denying Plaintiff benefits.  [AR 15-21]  Plaintiff

timely requested a review of that decision by the Appeals Council and requested an

extension of time to present a brief in support of review along with any updated medical

information.  [AR 8-9]  The Appeals Council granted Plaintiff an extension of time to

submit a brief and/or additional evidence.  [AR 6-7]  On October 1, 2015 Plaintiff's

counsel submitted a brief in support of her request for review [AR 214] and, on March

31, 2016, Plaintiff's counsel submitted an additional Medical Opinion Questionnaire

regarding Plaintiff's Physical Activities and Medical Opinion Questionnaire regarding

Plaintiff's Mental Impairments [AR 585-592].  The Appeals Council issued an Order

confirming its receipt of the additional evidence and making it part of the record.  [AR 5]

On October 6, 2016, the Appeals Council denied Plaintiff's request for review.  [AR 1-4]

Plaintiff timely filed an appeal with this Court on November 29, 2016.  [#1]  Because the

Appeals Council denied Plaintiff's request for review, the ALJ's decision is the final

decision of the Commissioner for purposes of this appeal.  *See* 20 C.F.R. §§ 404.981,

416.1481, 422.210.

### C.     The ALJ's Decision

The ALJ denied Plaintiff's applications for DIB and SSI after evaluating the

evidence pursuant to the five-step sequential evaluation process.  [AR 15-21]  At step

one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity

since September 14, 2013, the alleged onset date.  [AR 17]  At step two, the ALJ found

that Plaintiff had the following severe impairments:     status-post subarachnoid

hemorrhage and ruptured communicating aneurysm and malignant hypertension.  [AR

17-18]  At step three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically exceeds the severity of one of the listed impairments in the appendix of the regulations.  [AR 18]  Following step three, the ALJ determined that Plaintiff retained the RFC to perform sedentary work, except "she can no more than occasionally climb ramps and stairs and never climb ladders, ropes, or scaffolds" and "can occasionally kneel, crouch, and crawl and should avoid hazards such as unprotected heights and dangerous moving machinery."  [AR 18]  The ALJ provided a narrative setting forth the evidence considered in determining the RFC and explaining the weight given to the medical opinions in the record.  [AR 18-20]

At step four, the ALJ found that Plaintiff had past relevant work experience as a medical clerk (Dictionary of Occupational Titles ("DOT") #205.362-018), which is considered sedentary, semiskilled work.  [AR 20-21]  The ALJ concluded that "the exertional demands of [Plaintiff's] past work [as actually performed by her] are precluded by her residual functional capacity."  [AR 21]  The ALJ went on to find, however, that, in comparing Plaintiff's RFC with the physical and mental demands of the medical clerk position, Plaintiff could perform the work as generally performed according to the DOT.[7]  [AR 21]  Accordingly, the ALJ determined that Plaintiff was not under a disability from September 14, 2013 (the alleged onset date) through August 20, 2015 (the date of the ALJ's decision).  [AR 21]

---

[7] At step four, a claimant will be determined to be "not disabled" when it is determined that the claimant retains the RFC to perform either (1) the actual functional demands and job duties of a particular past relevant job as performed by the claimant; or (2) the functional demands and job duties of that job as generally required by employers throughout the national economy.  *See* Social Security Ruling 82-61, 1982 WL 31387 (1982); *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993).

## III. ANALYSIS

On appeal, Plaintiff argues that the ALJ's treatment of opinions provided by Plaintiff's treating medical provider was contrary to law and not supported by substantial evidence. [#15 at 3-18] The record considered by the ALJ included a Medical Opinion Re: Ability to Do Physical Activities and a Medical Opinion Questionnaire (Mental Impairments), both completed on September 18, 2014 by Hong-Nhi Nguyen [AR415-17, 420-22], a physician assistant who served as Plaintiff's primary care provider at the time of the July 20, 2015 hearing [AR 39].[8]

"An ALJ must evaluate every medical opinion in the record . . . although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (internal citation omitted). The regulations governing the Commissioner's consideration of medical opinions distinguish among "treating" physicians, "examining" physicians, and "nonexamining" (or "consulting") physicians. *Boyd v. Berryhill*, No. 17-CV-00722-MEH, 2017 WL 4877213, at *11 (D. Colo. Oct. 30, 2017); *see also* 20 C.F.R. §§ 404.1527(c), 416.927(c). "The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency

---

[8] The transcript of the hearing identifies Plaintiff's "primary care doctor" at the time of the hearing as "Wynn [phonetic]." [AR 39] Plaintiff testified that she saw "Dr. Wynn" at Colorado Internal Medicine Specialists. [AR 39-40] Ms. Nguyen, the physician assistant who submitted the opinions, worked at Colorado Internal Medicine Specialists at the time the opinions were submitted. [AR 417, 419, 422] Although the Commissioner's brief initially contends that "[t]here is no evidence [Ms.] Nguyen ever examined or treated Plaintiff" [#16 at 5], the brief subsequently concedes that Plaintiff's reference to "Dr. Wynn" at the hearing presumably was a reference to Ms. Nguyen [*id.* at 10 n.7]. The Court agrees and concludes that Ms. Nguyen is the same medical provider referred to as "Dr. Wynn" in the transcript of the hearing.

physician who has never seen the claimant is entitled to the least weight of all."
*Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).

Plaintiff repeatedly refers to the opinions offered by Ms. Nguyen as "medical opinions" and suggests that the ALJ should have given Ms. Nguyen's opinions the deference required of medical opinions offered by a treating source. [*See, e.g.*, #15 at 10-18] As Plaintiff acknowledges, however, because Ms. Nguyen is a physician assistant and not a licensed physician, she "is not considered to be an 'acceptable medical source'" according to the regulations in place at the time the ALJ rendered her decision.[9] [#15 at 15 n.1; *see* 20 C.F.R. §§ 404.1513(a), 416.913(a) (2015)] As such, Ms. Nguyen does not qualify as a "treating source" and her opinions are not considered "medical opinions."[10] Ms. Nguyen's opinions thus were not entitled to the special deference given to treating source opinions. *See Mounts v. Astrue*, 479 F. App'x 860, 865 n.1 (10th Cir. 2012).

The regulations do, however, expressly recognize physician assistants as other medical sources whose opinions may be used "to show the severity of [the claimant's] impairment(s) and how it affects [the claimant's] ability to work." 20 C.F.R. §§ 404.1513(d), 416.913(d) (2015). "Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration

---

[9] In evaluating the Commissioner's decision, the Court "refer[s] to and appl[ies] the versions of [the] regulations 'in effect at the time of the ALJ's decision.'" *Newbold v. Colvin*, 718 F.3d 1257, 1261 n.2 (10th Cir. 2013) (quoting *Chapo v. Astrue*, 682 F.3d 1285, 1291 n.5 (10th Cir.2012))

[10] The regulations define "medical opinions" as "statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s)." 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1). Similarly, a "treating source" is defined as the claimant's "own acceptable medical source who provides [ ] or has provided [the claimant] with medical treatment or evaluation . . . ." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).

of opinions from medical sources who are not 'acceptable medical sources.'"  Social Security Ruling 06-03P, 2006 WL 2329939, at *6 (Aug. 9, 2006).  Indeed, in an appropriate case, "an opinion from a medical source who is not an acceptable medical source . . . may outweigh the medical opinion of an acceptable medical source, including the medical opinion of a treating source."  20 C.F.R. §§ 404.1527(f)(1), 416.927(f)(1).  The Commissioner thus "generally should explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."  20 C.F.R. §§ 404.1527(f)(2), 416.927(f)(2). Thus, even though Ms. Nguyen's opinions were not "medical opinions," the Commissioner "was still required to explain the amount of weight [s]he gave to the opinions [Ms. Nguyen] expressed."  *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1163 (10th Cir. 2012).

When deciding what weight to give a medical source opinion—regardless of whether or not the source is an acceptable medical source—the ALJ must consider the factors provided in 20 C.F.R. § 404.1527 and 416.927.  *See Frantz v. Astrue*, 509 F.3d 1299, 1301-02 (10th Cir. 2007); *Lauxman v. Astrue*, 321 F. App'x 766, 769 (10th Cir. 2009); *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003).  Those factors include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the source's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the source is a specialist in the area upon which an opinion

is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  20 C.F.R. § 404.1527(c); 20 C.F.R. § 416.927(c).  While the ALJ must consider each of these factors, the ALJ need not explicitly discuss each of the factors in determining what weight to give an opinion.  *Mounts*, 479 F. App'x at 866 (citing *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007)).  The ALJ must, however, "provide[ ] 'good reasons in his decision for the weight he gave to the . . . opinion.'"  *Id.* (quoting *Oldham*, 509 F.3d at 1258).  "What matters is that the decision is 'sufficiently specific to make clear to any subsequent reviewer[ ] the weight the adjudicator gave to the . . . opinion and the reasons for that weight.'"  *Id.* (quoting *Oldham*, 509 F.3d at 1258).

With this framework in mind, the Court considers the ALJ's treatment of Ms. Nguyen's opinions regarding Plaintiff's physical abilities and mental limitations.

### A.  Opinion Regarding Plaintiff's Physical Activities

With regard to Plaintiff's physical capabilities, Ms. Nguyen opined that Plaintiff could not walk even a single city block without rest, could continuously sit for no more than two hours and could continuously stand for no more than ten minutes at a time. [AR 415]  Ms. Nguyen further opined that Plaintiff would require a position that allowed her to shift positions at will and would need to take unscheduled breaks approximately every two hours.  [*Id.*]  In response to a question on the form inquiring how long Plaintiff would have to rest before returning to work, Ms. Nguyen states that Plaintiff is "unable to work."  [AR 416]  Ms. Nguyen further stated that Plaintiff could never safely lift even less than ten pounds of weight.  [*Id.*]  Ms. Nguyen opined that Plaintiff should never stoop, crouch or climb ladders, but could occasionally twist and climb stairs.  [AR 417]

Ms. Nguyen stated that Plaintiff's impairments or treatment would require her to be absent from work more than twice a month. [*Id.*]

The ALJ concluded that Ms. Nguyen's opinion was "unsupported by the evidence of record" and thus gave the opinion only "little weight."[11] [AR 20] Notably, the ALJ does not contend that Ms. Nguyen's opinion was inconsistent with the record evidence; nor does she identify any specific inconsistencies between Ms. Nguyen's opinion and the record evidence. Instead, the ALJ states only that the opinion is "unsupported by the evidence of record."[12] The Court finds this singular, generalized statement

---

[11] The ALJ also noted that Ms. Nguyen's opinion that claimant was completely unable to work was "a conclusion regarding the claimant's overall disability status that is reserved for the Commissioner." [AR 20 (citing Social Security Ruling 96-5p)] Plaintiff does not challenge this portion of the ALJ's findings with regard to Ms. Nguyen's opinion; indeed, Plaintiff acknowledges that "the regulations state that the final issue of 'whether [a claimant] meets the statutory definition of disability' is an issue reserved to the Commissioner." [#15 at 16 (quoting 20 C.F.R. § 404.1527(d)(1))]

[12] At the hearing, Plaintiff testified that she had seen Ms. Nguyen "three of four times." [AR 39] Following this testimony, the ALJ noted that she didn't "have any supportive records from the physician's assistants to support the medical source statements that were submitted" and requested that counsel submit updated records from Colorado Internal Medicine Specialists. [AR 40] Following the hearing, Plaintiff submitted updated records from the Swedish Medical Center [AR 423], but does not appear to have ever submitted the requested updated records from Colorado Internal Medicine Specialists. In general, "[a]n ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." *Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir. 1996). In unpublished decisions, however, the Tenth Circuit has held that, where a claimant's representative submitted some records but not certain other records specifically discussed at the hearing, an ALJ could reasonably assume that plaintiff later chose not to submit the additional evidence because, "perhaps, it was not relevant," *Graham v. Apfel*, 149 F.3d 1190, 1998 WL 321215, at *3 (10th Cir. 1998) (unpublished table decision), or "perhaps because [the unsubmitted records] were of only minor importance," *Steadman v. Apfel*, 172 F.3d 879, 1999 WL 76907, at *4 (10th Cir. 1999) (unpublished table decision). The ALJ's failure to obtain the pertinent medical records under the circumstances present in this case—*i.e.*, where the ALJ was aware of the records, commented on the importance of the records in evaluating a medical source's opinion, and then discounted the medical source's opinion based upon a lack of support in the record—raises significant concerns for the Court. However, because the parties have not raised this issue and

insufficient to explain why the ALJ accorded the opinion only "little weight." *See, e.g.*, *Galindo v. Berryhill*, No. CV 16-804 CG, 2017 WL 3207914, at *4 (D.N.M. May 3, 2017) (finding that an ALJ "may not reject an opinion as unsupported by the evidence without explaining how the opinion and evidence conflict"); *Valenzuela v. Berryhill*, No. CV 16-522 CG, 2017 WL 3207159, at *4 (D.N.M. May 2, 2017) (holding ALJ's discussion insufficient to reject treating physician's opinion because Court was "left to guess at how exactly [the treating physician's] findings were unsupported by the record").

"Although the ALJ did discuss the medical records in general . . . [s]he did not attempt to make any specific connections between this objective evidence and [Ms. Nguyen's opinion] or the weight that should be afforded to it." *O'Dell v. Colvin*, No. 15-cv-00628-CBS, 2016 WL 5395247, at *5 (D. Colo. Sept. 27, 2016). Moreover, contrary to the ALJ's generalized statement, there actually is some evidence in the record that supports certain of Ms. Nguyen's opinions. Consistent with Ms. Nguyen's opinions, Plaintiff testified at the hearing that she was only able to walk for about ten minutes, that she could probably only stand for approximately ten minutes before she would need to sit, and that she cannot lift things due to her balance issues.[13]  [AR 44-45]  Similarly,

---

the Court finds sufficient alternative grounds for remanding this matter to the Commissioner, the Court finds it unnecessary to resolve whether it was error for the ALJ not to develop the record by obtaining the updated medical records from Colorado Internal Medicine Specialists.

[13] With regard to Plaintiff's testimony at the hearing, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's self-reported symptoms, but that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision."  [AR 19]  The remainder of the ALJ's decision fails to identify specifically which of the Plaintiff's statements regarding the severity of her symptoms the ALJ did not find credible.  *See Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988) (holding that "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of

medical records from July 2014 reflect that Plaintiff had started to ambulate with a walker, but still was unable to walk with a cane. [AR 442] And records from a January 15, 2015, follow-up appointment indicate that Plaintiff continued to experience some left-sided weakness. [AR 429] In addition to this evidence in the record at the time the ALJ rendered her opinion, Ms. Nguyen's opinion regarding Plaintiff's physical capabilities also finds support in the additional Medical Opinion Questionnaire Physical Activities form completed by another medical provider following the hearing and accepted into the record by the Appeals Council.[14] [AR 586-88]

Although the ALJ may have had valid reasons to assign only "little weight" to Ms. Nguyen's opinion even in the face of this seemingly supportive record evidence,[15] the

findings" (footnote omitted)); *McGoffin v. Barnhart*, 288 F.3d 1248, 1254 (10th Cir. 2002) (criticizing the ALJ's decision for failing to "explain and support with substantial evidence which of [the claimant's] testimony [the ALJ] did not believe and why"). Moreover, the ALJ's decision appears to rely heavily on Plaintiff's purported testimony at the hearing that she "has good balance." [AR 19, 20] Contrary to the ALJ's representation, Plaintiff's actual testimony was that she does *not* have "very good balance without the walker" [AR 45] and thus the ALJ's finding that Plaintiff testified that she had good balance is not supported by substantial evidence.

[14] The Tenth Circuit has held that new evidence accepted into the record by the Appeals Council "becomes part of the administrative record to be considered [by the Court] when evaluating the [Commissioner's] decision for substantial evidence." *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994); *see also Vallejo v. Berryhill*, 849 F.3d 951, 956 (10th Cir. 2017) (finding that district court was required "to conduct a substantial-evidence review by assessing the entire agency record, including [the] never-before assessed [medical source] opinion").

[15] For example, the ALJ gave "great weight" to the opinion offered by Dr. Maria Gumbinas, a state medical consultant who reviewed claimant's records, finding Dr. Gumbinas's opinion to be "consistent with the evidence of record." [AR 20] On appeal, Plaintiff does not challenge the ALJ's conclusion that Dr. Gumbinas's opinion is consistent with the record evidence. Instead, Plaintiff argues that Dr. Gumbinas's opinion, dated March 14, 2014, necessarily did not take into account Plaintiff's medical records subsequent to the date of the opinion or the opinions offered by Ms. Nguyen. [#15 at 16-17] Aside from Ms. Nguyen's opinions, however, Plaintiff has failed to identify anything in the subsequent medical records that evidences "a material change

ALJ has not articulated those reasons and this Court "may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself." *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007).

The Court thus finds that the ALJ's discussion of the weight it accorded Ms. Nguyen's opinions regarding Plaintiff's physical capacity fails to provide sufficient specific explanation to allow meaningful review by this Court.

### B. Opinion Regarding Plaintiff's Mental Impairments

With regard to Plaintiff's mental impairments, Ms. Nguyen opined that Plaintiff's abilities in the following areas was poor or none: interact appropriately with the general public, remember work-like procedures, maintain attention for two-hour segments, perform at a consistent pace without an unreasonable number and length of rest periods, respond appropriately to changes in routine work setting and deal with normal work stress, and to understand and remember detailed instructions. [AR 420-22] In addition, Ms. Nguyen opined that Plaintiff had only "fair" capability of maintaining socially appropriate behavior, understanding and remembering very short and simple instructions, and making simple work-related decisions. [AR 421] Ms. Nguyen again indicated that Plaintiff's impairments or treatment would require her to be absent from work more than twice a month. [*Id.* at 422]

The ALJ concluded that "[t]here is absolutely no evidence to support this opinion" and therefore gave it "no significant weight." [AR 17-18] As Plaintiff points out, the ALJ considered Ms. Nguyen's opinion with regard to Plaintiff's mental limitations in the context of her analysis of whether Plaintiff had depression or "any other psychiatric

_____

in [Plaintiff's] condition that would render [Dr. Gumbinas's] opinion stale." *Tarpley v. Colvin*, 601 F. App'x 641, 644 (10th Cir. 2015).

condition." [*Id.* at 18]  The ALJ did not expressly discuss Plaintiff's mental impairments in her discussion of the limitations resulting from Plaintiff's status-post subarachnoid hemorrhage and ruptured communicating aneurysm or the discussion of Plaintiff's RFC in general.  [AR 17-20]  It thus is not clear whether the ALJ considered that the alleged mental limitations identified by Ms. Nguyen may have resulted from Plaintiff's status-post subarachnoid hemorrhage and ruptured communicating aneurysm as distinguished from a separate medically determinable mental impairment.

Here again, the Court finds the ALJ's analysis of Ms. Nguyen's opinion insufficient to allow for meaningful review.  As with her discussion of the opinion regarding Plaintiff's physical limitations, the ALJ does not contend that Ms. Nguyen's opinion is inconsistent with the record evidence or identify any specific inconsistencies between Ms. Nguyen's opinion and the record evidence.  Instead, the ALJ states only that "[t]here is absolutely no evidence to support" the opinion.  The Court finds this singular, generalized statement insufficient to explain why the ALJ accorded the opinion "no significant weight."  *See, e.g.*, *Galindo*, 2017 WL 3207914, at *4 (finding that an ALJ "may not reject an opinion as unsupported by the evidence without explaining how the opinion and evidence conflict"); *Valenzuela*, 2017 WL 3207159, at *4 (holding ALJ's discussion insufficient to reject treating physician's opinion because Court was "left to guess at how exactly [the treating physician's] findings were unsupported by the record").

Moreover, the Court finds that the ALJ's assertion that there is "absolutely no evidence" to support Ms. Nguyen's opinion regarding Plaintiff's mental limitations is not supported by substantial evidence.  To the contrary, there is evidence in the record that

supports at least some of Ms. Nguyen's opinions with regard to Plaintiff's mental limitations.[16] At the time Plaintiff was discharged from the rehabilitation program, she continued to have mild pragmatic, written language, auditory and reading comprehension deficits, mild-to-moderate memory and attentional deficits, and moderate organizational, problem-solving, and reasoning deficits. [AR 274] Plaintiff's subsequent treatment notes continue to acknowledge that Plaintiff had a history of neurocognitive deficits as a result of her strokes [AR 429, 439], but the record does not contain any testing or other quantification of those deficits. In December 2013, however, Plaintiff's treating physician noted that he suspected Plaintiff's recovery would be "quite a bit less than her baseline." [AR 405]

Plaintiff's own testimony also supports some of the conclusions reached by Ms. Nguyen with regard to her mental limitations. Plaintiff testified that she has problems with her concentration and memory. [AR 37] As an example, Plaintiff stated that she is unable to use the stove to prepare meals, because she would forget to turn it off. [AR 36-37, 185] Plaintiff further stated that her ability to handle money was not as good as it used to be because of her memory deficits. [AR 186-87] She reported that she was "ok" with written instructions but could only follow short spoken instructions. [AR 188] Plaintiff testified that she has tried memory games recommended by her doctor but finds them difficult. [AR 38] She testified that she had good days and bad days, with about six bad days per month where she is extra tired and experiences nausea. [AR 46-48]

---

[16] The Court notes that many of Ms. Nguyen's opinions regarding Plaintiff's mental impairments also are supported by the additional Medical Opinion Questionnaire Mental Impairments submitted to—and accepted for inclusion in the record by—the Appeals Counsel. [AR 590-92; see supra note 14]

The Court thus finds that the ALJ's discussion of Ms. Nguyen's opinion regarding Plaintiff's mental limitations is not "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the . . . medical opinion[s] and the reasons for that weight." *Oldham*, 509 F.3d at 1258 (quotation omitted). In addition, the Court finds that the ALJ's conclusion that there was "absolutely no evidence" to support Ms. Nguyen's opinions was not supported by substantial evidence.

## IV. CONCLUSION

Accordingly, for the foregoing reasons, **IT IS HEREBY ORDERED** that the decision of the Commissioner that Plaintiff is not disabled is **REVERSED** and this matter is **REMANDED** for further proceedings consistent with this Order.[17]

DATED: March 16, 2018                              BY THE COURT:

                                                  s/Scott T. Varholak
                                                  United States Magistrate Judge

---

[17] The Court does not intend this Order to dictate the results that should be reached on remand. *See Kepler v. Chater*, 68 F.3d 387, 391–92 (10th Cir. 1995) ("We do not dictate any result [by remanding the case]. Our remand simply assures that the correct legal standards are invoked in reaching a decision based on the facts of the case." (internal quotation omitted)).